Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Gregory Rittenhouse, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BlendJet, Inc.,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents


I. Introduction. 1

II. Parties. 2

III. Jurisdiction and Venue. 2

IV. Facts. 3

A. Defendant's BlendJet 2 is dangerously defective. 3

B. Defendant knows of the BlendJet 2's defects. 5

C. Defendant fails to disclose, and in fact affirmatively conceals, the BlendJet 2's latent safety defects. 9

D. Plaintiff suffered economic harm from his purchase of two defective BlendJet 2s. 10

E. Defendant breached its contract with and warranties to Mr. Rittenhouse and the putative class. 11

F. Defendant's actions injured other members of the putative class. 12

V. Class Action Allegations. 12

VI. Claims. 14

Count I: Breach of Contract 14

Count II: Violations of New York Gen. Bus. Law § 349 15

Count III: Violations of State Consumer Protection Statutes 16

Count IV: Breach of Implied Warranty of Merchantability 18

Count V: Fraudulent Omission 19

Count VI: Quasi-Contract 20

VII. No Adequate Remedy at Law. 20

VIII. Prayer for Relief. 21

IX. Demand For Jury Trial. 22

## I. Introduction.

1. Defendant BlendJet, Inc. ("BlendJet" or "Defendant") makes, markets, distributes, and sells the "BlendJet 2." The BlendJet 2 is a battery-powered personal portable blender made, distributed, sold, and marketed since 2020.




2. Portable blenders' small size and lightweight design allow consumers to blend smoothies, shakes, and more on the go. Like many other portable blenders, BlendJet 2 blenders are operated by push-button and include a blending jar that doubles as a drinking cup.

3. The BlendJet 2 is one of the most popular portable blenders on the market.

4. But, this popularity is concerning, given BlendJet 2's link to several reports of serious mechanical and electrical hazards, including broken blades from regular use, overheating, and melted charging cables.

5. Several complaints made to the U.S. Consumer Product Safety Commission (CPSC) detail instances where a BlendJet 2's charging cable melted or smoked. One such complaint stated that the blender's lithium-ion battery caught fire, then "exploded and started a larger fire." In that case, the consumer reported that the "the fire chief identified the rechargeable battery as the cause of the explosion."

6. Other CPSC complaints reported that pieces of the blender's blade broke off during use, including one instance where the user "possibly swallowed" one of the pieces. The BlendJet 2's defective blending blades also led to a similar incident where a child sucked a small piece of blade through a straw but, luckily, discovered it in her mouth before swallowing.

7. Plaintiff Gregory Rittenhouse purchased two BlendJet 2s as gifts for his wife. In just a matter of weeks, Mr. Rittenhouse experienced the defects detailed above—instances of overheating in the BlendJet 2 and accompanying charger cable and, also, a blending blade assembly that became so wobbly and loose that he had to manually tighten it himself.

8. Fortunately, Mr. Rittenhouse noticed the overheating before a fire started and fixed the blending blade assembly before it broke or detached and injured someone. But Defendant's defective product remains on the market. It continues to be used by tens of thousands of consumers every day. This presents a fire hazard and unreasonable risk of injury. And if consumers knew the truth, they would immediately stop using the BlendJet 2. Plaintiff brings this lawsuit to force Defendant to recall its unreasonably dangerous products and issue full refunds to consumers who purchased them.

## II. Parties.

9. Plaintiff Gregory Rittenhouse is a citizen of New York, domiciled in West Islip.

10. The proposed class and subclasses (identified below) include citizens of every State within the United States.

11. Defendant BlendJet, Inc. is a Delaware corporation with a principal place of business in Benicia, California.

12. Defendant makes, distributes, sells, and markets the BlendJet 2 (the "Product"), and has done so throughout any applicable statute of limitations period.

## III. Jurisdiction and Venue.

13. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

14. The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California.

15. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d). Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant has its principal place of business in this District.

**IV. Facts.**

16. Defendant sells the BlendJet 2 directly through its website as well as through third-party vendors.

**A. Defendant's BlendJet 2 is dangerously defective.**

17. Consumers reasonably expect that portable blenders, including the BlendJet 2, are safe for their intended purpose. Consumers would not anticipate that a product specifically made for retail consumers and marketed as such is designed in a manner that could cause a fire or injure everyday consumers with normal use.

18. On its website, BlendJet touts the BlendJet 2's "patented turbojet technology." It claims that its unique design, offsetting the BlendJet 2's stainless steel blades from the center of the blender's base, creates a "tornado effect" allowing for "dramatically better blending."

19. BlendJet also advertises the BlendJet 2 as having a more powerful motor and battery capacity that is double that of its predecessor, the BlendJet One.






20. The BlendJet 2 is USB-C rechargeable and comes with a reversible charging cable. BlendJet claims that a single charge can power the BlendJet 2 for 15+ blends and that the blender recharges quickly.




21. But the design and/or manufacture of the BlendJet 2's battery, charging cable, and blending blade assembly make the Product dangerously defective.

22. The blending blades are not sufficiently durable to remain intact and free from breakage during normal use. Unbeknownst to consumers at the point of sale, pieces of the blending blades or the blade assembly shaft may break off during routine use of the BlendJet 2. This failure represents a serious safety hazard to users: sharp blade remnants create an unreasonable risk of injury and laceration to individuals who consume them.

23. The BlendJet 2's battery and USB charging cables, on the other hand, present an unreasonable risk of overheating and fire. During routine recharging, charging cables and the BlendJet 2 itself heat to unsafe levels and create an unreasonable risk of fire to the Product and surrounding property. BlendJet fails to disclose this defect at the point of sale as well.

24. The BlendJet 2s do not conform to industry standards, or to a reasonable consumer's expectation, due to the defective design and/or manufacture of their blending blades and assembly, battery, and charging cables—all of which render the blenders dangerously defective. Defendant's decisions in designing and/or manufacturing its BlendJet 2s also makes them unusable for their intended purpose.

**B. Defendant knows of the BlendJet 2's defects.**

25. Consumers have repeatedly posted reviews and incident reports stating that BlendJet 2s are dangerous and present unreasonable risks of serious injury and fire. For example, multiple consumers have reported to the Consumer Product Safety Commission that the blenders are defective. These complaints date back to at least August 2022.

26. These complaints include, for example, that the "wire on the blender melted," that the blender "melted the charging cable and started burning," and that the blender "caught fire."

27. Other consumers have reported that the "blades broke off and fell into food," "almost became part of the morning breakfast," and was possibly swallowed by a child.

28. Below are examples of such reports:

> **Report Summary**
> Consumer was making food in an electric blender for an 11 YOF daughter. One of the blades broke off and fell into food. Daughter sucked up the blade and immediately spit it out while it was in her mouth. Consumer states this is very dangerous. Daughter was not injured.

**Incident Report Details**

Attachments (4)






**Report Summary**

Consumer reports that the wire on the blender melted and the charging area was burned during charging. Consumer noticed the burned area.

**Incident Report Details**

Attachments (7)









**Report Summary**

75 YOM Consumer states that while charging the portable blender at home, the wire melted and burned in the blender causing a lot of smoke and a small fire. No Injuries Reported.

**Incident Report Details**

Attachments (2)




**Report Summary**

56 YOM reported that the blade of his portable blender broke off while it was mixing his shake. He was concerned because he could swallow it. The blender was used with a shake packet in it, water and ice to mix the shake.

## Incident Report Details

### Attachments (1)



**Report Summary**

The Consumer reported that their portable blender was charging for the second time since they purchased it and it melted the charging cable and started burning. The Consumer is concerned if they hadn't been home and noticed the smell, it would have caught fire.

## Incident Report Details

### Attachments (5)








**Report Summary**

21 YOM stated that they found that the ends of two of the blender blades were broken while mixing ice. One of the pieces was inside the cup they were about to drink; however, the second piece was not found and may have been swallowed by him or his son.

## Incident Report Details

### Attachments (2)




**Report Summary**

The Consumer reports that when he turned his blender received the same day on for the 2nd time, it started the cycle but didn't turn off. He heard it burning and saw glowing through the plastic base and smelled the distinct smell of electrical fire. It then started smoking.

**Incident Report Details**

Attachments (6)



**Report Summary**

58 YO Consumer & their 72 YO husband were charging their portable blender on the kitchen island, and it caught fire! The product exploded and started a larger fire. FD arrived & they identified that rechargeable battery as the cause of the explosion. No Injuries Reported.

**Report Summary**

The Consumer reports that the blade in the portable mini blender broke off and almost became part of the morning breakfast

29. The Consumer Product Safety Commission (CPSC) promptly informs manufacturers when they receive consumer complaints about a dangerous product. In addition, the CPSC publicly publishes these complaints on its website shortly after the complaints are made. Thus, Defendant is aware of these complaints about the Product's defects. Several consumers who submitted complaints to the CPSC about the BlendJet 2 stated that they made complaints directly to the manufacturer as well.[1]

30. In addition, Defendant, like other large producers of consumer products, also monitors and keeps track of consumer reviews and complaints. This is diligence that large companies like Defendant routinely do when selling a consumer product. Defendant even responds to consumer questions and concerns submitted to the CPSC and retailers, showing that they monitor

[1] Saferproducts.gov, "Report Number: 20230416-4D690-2147348077" (published May 12, 2023) (online at: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4177225); Saferproducts.gov, "Report Number: 20230403-4CB3D-2147348298" (published April 21, 2023) (online at: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4161791); Saferproducts.gov, "Report Number: 20220809-C20F2-2147354500" (published August 8, 2022) (online at: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3856757).

and see consumer complaints.[2]

31. Thus, Defendant is aware that BlendJet 2s have repeatedly created an unreasonable risk of fire and harm, and knows that the blending blades and assembly, battery, and charging cables are dangerously defective.

**C. Defendant fails to disclose, and in fact affirmatively conceals, the BlendJet 2's latent safety defects.**

32. Consumers cannot reasonably know about the dangerous nature of the BlendJet 2s at the point of sale and cannot discover the dangers presented by the blending blades and assembly, battery, and charging cables with a reasonable investigation at the time of purchase. Consumers do not realize that, even when the BlendJet 2 is used as intended, it can create an unreasonable risk of fire and serious injury. They reasonably expect that Defendant—who has far greater expertise in product safety, and who is made aware of consumer complaints made to the CPSC—would not market a product that was unsafe. To lay consumers who are not experienced in product design and do not realize that, the blender appears safe.

33. Defendant does not put consumers on notice of the dangers posed by the BlendJet 2. Defendant could have warned consumers about the dangers presented by the blender.

34. Defendant instead affirmatively conceals safety issues present in the BlendJet 2. In a Reddit post made 3 years ago, Defendant admitted to a policy and practice of deleting negative reviews from their website.[3]


BlendJet • 3 yr. ago

Hi there! Just wanted to address some of your concerns. If we delete someone's comment, it's only after we've reached out to them via DM. The reason for this is we don't want our social media pages to become customer support threads.

---

[2] Saferproducts.gov, "Report Number: 20230416-4D690-2147348077" (published May 12, 2023) (online at: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4177225); Saferproducts.gov, "Report Number: 20230416-4D690-2147348077" (published April 13, 2023) (online at: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4152817).

[3] Reddit.com, "I noticed BlendJet deletes ANY negative comments on their pages and it's got me worried about my blendjet 2." (published 2021) (online at:

35. Thus, consumers are left unaware about the dangers presented by BlendJet 2s at the time of purchase.

36. As a manufacturer of consumer products, Defendant is responsible for the design and safety testing of its Products.

37. Yet, Defendant did nothing to disclose the dangers presented by BlendJet 2 to consumers.

38. In short, Plaintiff and class members purchased a dangerous Product that is unusable for its intended central purpose: the safe blending and consuming of smoothies, shakes, and other foods/liquids.

**D. Plaintiff suffered economic harm from his purchase of two defective BlendJet 2s.**

39. In or around December 2022, Mr. Rittenhouse purchased two BlendJet 2s from BlendJet's website.

40. Mr. Rittenhouse purchased the Products for personal, family, or household use—specifically, as a gift for his wife.

41. In purchasing the items, Mr. Rittenhouse relied on Defendant's position as a merchant of blenders for assurances that the Products would be safe for use.

42. Roughly a month after purchase, Mr. Rittenhouse noticed that, during normal and expected charging, the BlendJet 2 and the USB-C charging cable that it came with overheated.

43. Mr. Rittenhouse also noticed the BlendJet 2 blending blade assembly became wobbly and loose within approximately one month of his purchase. Mr. Rittenhouse had to manually tighten the assembly to make the Product usable and prevent further breakage.

44. Mr. Rittenhouse suffered an economic injury because he purchased blenders that are worthless for their intended purpose (and which he certainly would not have purchased had he known the truth).

45. Before purchasing the BlendJet 2, Mr. Rittenhouse did not and could not have known

---

https://www.reddit.com/r/Smoothies/comments/ltse0p/i_noticed_blendjet_deletes_any_negative_comments/).

that the Products suffered from significant defects. Reasonable consumers with no special knowledge of product design or safety testing must rely on manufacturers' representations of safety when deciding to purchase a product. Had Mr. Rittenhouse known the truth, he would not have purchased the BlendJet 2s. Additionally, as a result of the defect, the Rittenhouses have not and will not use their blenders again. Likewise, if the truth were known, other consumers would not purchase the BlendJet 2 either, which would drive down the demand for, and consequently the price of, the blender. So apart from purchasing Products he would not have bought at all, Mr. Rittenhouse also overpaid for those Products.

46. Thus, Mr. Rittenhouse suffered economic injury as a direct result of Defendant's actions. Mr. Rittenhouse would still purchase another BlendJet 2 from Defendant if the Product was re-designed and/or re-manufactured to make it safe. Mr. Rittenhouse, however, faces an imminent threat of harm because he will not be able to rely on representations of safety and the comprehensiveness of warnings in the future, and thus will not be able to purchase the Product.

**E. Defendant breached its contract with and warranties to Mr. Rittenhouse and the putative class.**

47. Mr. Rittenhouse and the putative class entered contracts with Defendant. When Mr. Rittenhouse and other members of the putative class purchase and paid for the Products that they bought as described above, they accepted offers that Defendant made. The offer was to provide BlendJet 2 Products that were free from safety defects, and fit and safe for their ordinary use, as described on Defendant's website, for the price advertised. By selling the BlendJet 2 Products, Defendant warranted that they were free from safety defects, and fit and safe for their ordinary use.

48. That the BlendJet 2 was free from defects, and safe for ordinary use (blending food and liquids for consumption) were material terms of the contract.

49. Mr. Rittenhouse and putative class members performed their obligations under the contract by paying for the items that they purchased.

50. Defendant breached its contract by failing to provide Plaintiff and other putative class members with Products that were free from defects, and fit and safe for their ordinary use. Defendant instead provided Products that were defective (as described above), and unfit and unsafe

for ordinary use. Defendant also breached warranties for the same reasons.

**F. Defendant's actions injured other members of the putative class.**

51. Defendant's material omissions, false representations of safety, and failure to warn about the dangerous blending blades and assembly, battery, and charging cables allowed it to charge more for BlendJet 2s than it could have had the defect been disclosed to consumers. Consumers, like Mr. Rittenhouse, would not have bought the Product, or, at a minimum, would have paid substantially less for it, had they known that it creates a serious risk of injury and fire. Stated another way, if Defendant disclosed the dangers presented by the BlendJet 2, demand would quickly drop, which would cause the market price of the Product to plummet. Thus, as a result of Defendant's misrepresentations and omissions, Plaintiff and class members were charged a price premium and sustained economic injuries.

52. In addition, consumers purchase portable blenders for the specific purpose of safely blending and consuming smoothies, shakes, and other foods/liquids. BlendJet 2s instead endanger consumers who purchase and use them as intended. As a result, the Products that Plaintiff and class members received in exchange for the purchase price are worthless for their intended purpose. So, the economic injury suffered by Plaintiff and class members consists of the entire purchase price of the BlendJet 2 because what they received was useless for its intended purpose.

## V. Class Action Allegations.

51. Plaintiff brings claims on behalf of himself, and for certain claims, on behalf of the proposed class of:

- Nationwide Class: all persons who purchased Defendant's Products while living in the United States during the applicable statute of limitations (the "Nationwide Class");
- New York Subclass: all persons who, while in the state of New York, purchased Defendant's Products during the applicable statute of limitations (the "New York Subclass"); and
- Consumer Protection Subclass: all persons who, while living in certain identified states (the "Consumer Protection Subclass States"), purchased Defendant's Products

during the applicable statute of limitations.

52. The Consumer Protection Subclass States are as follows: California, Connecticut, Illinois, Maryland, Missouri, and New York.

53. The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

54. The proposed classes contain members so numerous that separate joinder of each member of the class is impractical. Based on the pervasive distribution of BlendJet products, there are tens of thousands of proposed class members (or more).

***Commonality***

55. There are questions of law and fact common to the proposed classes. Common questions of law and fact include, without limitation:

- Whether the Products pose a safety risk to consumers;
- Whether the Products are fit for their ordinary and intended use;
- Whether Defendant engaged in an unlawful deceptive practice in marketing and selling the Products as they are;
- Whether Defendant was unjustly enriched by the sale of the Products;
- Whether Plaintiff suffered ascertainable loss as a result of Defendant's conduct;
- Whether Defendant should be enjoined from further sales of the Products;
- What damages are needed to compensate Plaintiff and the proposed classes.

***Typicality***

56. Plaintiff's claims are typical of the proposed classes. Like the proposed classes,

Plaintiff purchased the BlendJet 2.

***Adequacy***

57. The interests of the members of the proposed classes will be adequately protected by Plaintiff and his counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed classes that they seek to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the classes' claims.

***Predominance and Superiority***

58. The prosecution of separate actions by individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the classes. For example, individual adjudication would create a risk that the same product is found unfit for its ordinary use for some proposed class members, but not for others. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant has made and marketed a defective Product unfit for its ordinary use.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**Count I: Breach of Contract**

**(on behalf of Plaintiff and the Nationwide Class)**

60. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

61. Plaintiff brings this count individually and for the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the New York Subclass.

62. Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website. A valid contract existed between Plaintiff (and the class) and Defendant.

63. The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

64. The contracts further required that Defendant provides Plaintiff and class members with Products that conformed to the description advertised on the website and that were free of defects. These were specific and material terms of the contracts.

65. Plaintiff and class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

66. Defendant breached the contracts with Plaintiff and class members by failing to provide Products that conformed to the description advertised on the website. Defendant breached its contract by providing Products that were defective, as described more fully above.

67. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

68. Plaintiff provided Defendant notice of this breach, by mailing a letter to Defendant on August 24, 2023.

**Count II: Violations of New York Gen. Bus. Law § 349**

**(on behalf of Plaintiff and the New York Subclass)**

69. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

70. Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

71. Plaintiff and the subclass purchased the Products in New York.

72. Defendant's actions are consumer-oriented, because they cause consumer injury and harm to the public interest. Defendant sells blenders to consumers for personal, family, and household use. The defects in Defendant's Products are dangerous to consumers. As described

above, the defective blades can dislodge and cause injury to consumers. In addition, the battery and charging cable defect can cause the components to heat up, burning consumers and starting fires.

73. These defects have a broad impact on consumer at large, *e.g.*, hundreds or thousands of New Yorkers.

74. As described in greater detail above, Defendant's misrepresentations were willful and knowing. Numerous complaints about the Products' defects have been reported to the Consumer Product Safety Commission. These complaints date back to at least August 2022. The Consumer Product Safety promptly notifies manufacturers of complaints, and also publishes these complaints in a public database. Thus, Defendant is aware of the defects.

75. Despite knowing of these defects, Defendant did not warn consumers of these defects.

76. Plaintiff and subclass members suffered an injury as a result of Defendant's omissions. Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (blenders that functioned as represented). They overpaid for the Products because they are sold at a price premium due to Defendant's omissions and misrepresentations.

77. Plaintiff and the subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief. *See* N.Y. Gen. Bus. Law § 349(h).

**<u>Count III: Violations of State Consumer Protection Statutes</u>**

**(on behalf of Plaintiff and the Consumer Protection Subclass)**

78. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

79. This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

80. Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.

81. As alleged in detail above, Defendant's conduct, including the marketing and sale of its Products to consumers, violates each statute's prohibitions.

82. As further alleged above, Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members. Defendant's misrepresentations and omissions were misleading to a reasonable consumer, and Plaintiff and subclass members reasonably relied on Defendant's misrepresentations.

83. Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Defendant's Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price

premium due to the misrepresentation and omissions, and/or (c) they received a Product that was defective and thus less valuable than what they paid for.

84. In this way, Plaintiff and the members of the proposed Subclass have suffered an ascertainable loss, in an amount to be determined at trial.

**Count IV: Breach of Implied Warranty of Merchantability**

**(on behalf of Plaintiff and the Nationwide Class)**

85. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

86. Plaintiff brings this count individually and for the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the New York Subclass.

87. The Uniform Commercial Code § 2-314 (UCC) states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

88. As alleged above, Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website. A valid contract existed between Plaintiff (and the class) and Defendant.

89. Defendant is and was, at all relevant times, a merchant with respect to blenders. The BlendJet 2 constitutes a "good" under the UCC.

90. Plaintiff and class members purchased the BlendJet 2.

91. As the manufacturer of the Products, Defendant impliedly warranted to Plaintiff and the class that the Products were of merchantable quality and were safe for their ordinary use. In fact, the Products, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which blenders are used. Specifically, as described in greater detail above, the blenders are inherently flawed and defective because (1) the blades are not secure, and (2) the battery and charging cable are prone to overheating. The defective design makes them unfit for ordinary purposes even when used correctly.

92. Thus, Defendant breached the implied warranty of merchantability in connection

with the sale and distribution of the Products.

93. Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's headquarters on August 24, 2023.

94. Defendant's breach directly caused Plaintiff and class members harm. Had Defendant not impliedly warranted that the Products were fit and safe for their ordinary purpose, Plaintiff and class members would not have bought the products.

**Count V: Fraudulent Omission**

**(on behalf of Plaintiff and the Nationwide Class)**

95. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

96. Plaintiff brings this count individually and for the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the New York Subclass.

97. As alleged in detail above, Defendant made materially misleading omissions concerning the safety of the BlendJet2. Defendant concealed information concerning the defects regarding the blades, battery, and charging cable.

98. In deciding to purchase consumer products from Defendant, Plaintiff and the class reasonably relied on Defendant's omissions to form the mistaken belief that the BlendJet2 was safe for use.

99. As alleged above, Defendant's fraudulent conduct was knowing and intentional. The omissions made by Defendant were intended to induce and actually induced Plaintiff and class members to purchase the BlendJet2. The Plaintiff would not have purchased the Products had they known of the defects. Class-wide reliance can be inferred because Defendant's omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

100. Defendant had a duty to disclose the defect because it had superior knowledge and access to facts about the defect. A reasonable consumer could not have expected or known that the Product was defective.

101. Plaintiff and class members were injured as a direct and proximate result of Defendant's fraudulent omissions because (a) they would not have purchased the Products if they

had known it was unsafe and unfit for use; (b) they overpaid for the Products because they were sold at a price premium due to Defendant's false representations; and/or (c) they received Products that were worthless for their intended purpose. Plaintiff and the class are entitled to damages and other legal and equitable relief as a result.

102. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Count VI: Quasi-Contract**

**(on behalf of Plaintiff and the Nationwide Class)**

103. Plaintiff incorporates by reference the allegations in paragraphs 1-46 and 51-59.

104. Plaintiff bring this count individually and for the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the New York Subclass.

105. Plaintiff and class members purchased BlendJet2s. They reasonably believed that the blenders would function as advertised, and would be fit for their expected ordinary purpose. Plaintiff and class members did not, and could not, have known that the Products were defective.

106. Plaintiff and class members conferred a tangible and material economic benefit upon Defendant by purchasing defective Products.

107. In exchange for the purchase price, Defendant provided Products with inherent defects, which make the Products unfit and unsafe for their ordinary use. Defendant knew and appreciated the benefit they incurred from consumers purchasing BlendJet2s.

108. Thus, Defendant is aware of, and has retained, the unjust benefit conferred upon them by Plaintiff and the class members.

109. Defendant received a direct and unjust benefit, at the Plaintiff's expense.

110. Plaintiff and the class seek restitution.

**VII. No Adequate Remedy at Law.**

111. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

112. To begin, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, to recover under a breach of contract theory, Plaintiff must show that a contract was formed. Because obtaining damages requires additional showings not required for restitution, the equitable remedies that Plaintiff requests are more certain than the legal remedies that Plaintiff requests.

113. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

**VIII. Prayer for Relief.**

114. Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as a representative for the Nationwide Class, New York Subclass, and the Consumer Protection Subclasses, and appointing his counsel as lead counsel for the classes;
- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of BlendJet;
- A declaration that BlendJet 2s are unfit for ordinary purposes and pose a serious safety risk to consumers;
- An order enjoining BlendJet from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective blenders; requiring BlendJet to issue corrective actions including notification, recall, service bulletins, or replacement of the blenders; and requiring BlendJet to preserve all evidence relevant to this lawsuit and notify blender owners with whom it comes in contact of the pendency of this and related litigation;
- Nominal damages as authorized by law;
- Restitution as authorized by law;
- Pre- and post-judgment interest;

- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

**IX. Demand For Jury Trial.**

115. Plaintiff demands a jury trial on all issues so triable.

Dated: September 5, 2023

Respectfully submitted,

By: /s/ *Christin Cho*

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Alan M. Feldman*
Edward S. Goldis*
Zachary Arbitman*
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

*Attorneys for Plaintiff*

*Pro Hac Vice Applications Forthcoming